## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PASCAL GEDEON,<br>　　Plaintiff | : | |
| | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 23-CV-1600 |
| | : | |
| UNITED STATES *et al.*<br>　　Defendants | : | |
| | : | |

### MEMORANDUM

**PRATTER, J.**                                                                                          **JUNE 13, 2023**

In a prior Screening Memorandum, the Court dismissed certain claims presented by pretrial detainee Pascal Gedeon and stayed the balance of this civil action pending a resolution of Mr. Gedeon's criminal charges. *Gedeon v. United States*, No. 23-1600, 2023 WL 3570942, at *1 (E.D. Pa. May 18, 2023) (the "Screening Memorandum"). Presently pending are several motions Mr. Gedeon filed after the Screening Memorandum was issued. He has filed two Motions seeking relief in the nature of reconsideration (ECF Nos. 8, 12), a Motion for Clarification (ECF No. 9), a "Motion for Creation of Remedy and For a Speedy Hearing" (ECF No. 10), and a Motion for Leave to Amend (ECF No. 11.) For the following reasons, the Motions will be denied.

## I.     MOTIONS FOR RECONSIDERATION

In the Screening Memorandum, the Court concluded that the *Bivens* claims against Defendants AUSA Kelly M. Harrell and AUSA Eileen Castilla Geiger should be dismissed (1) on the basis of absolute prosecutorial immunity, and (2) because the relief Mr. Gedeon sought on his claims against them, that they be criminally prosecuted, was not relief the Court could grant in a

civil rights action. *See Screening Memorandum*, 2023 WL 3570942, at *3.[1] Mr. Gedeon alleged

in his Complaint that Ms. Harrell and Ms. Geiger had violated his due process rights by filing

vexatious motions in his pending criminal case causing his pretrial detainment to be prolonged

even though they were aware of alleged defects in the criminal statutes under which Mr. Gedeon

was charged, and improperly received information from case agents. (Compl. (ECF No. 2) at 5–

6.) He asked as relief that the prosecutors be charged with crimes. (*Id.*) The Court determined

that the claims against Ms. Harrell and Ms. Geiger should be dismissed because prosecutors are

entitled to absolute immunity from liability for acts that are "intimately associated with the judicial

phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case."

*Screening Memorandum*, 2023 WL 3570942, at *3 (citing *Imbler v. Pachtman*, 424 U.S. 409, 430-

31 (1976)). The Court determined that the allegations concerning filing allegedly vexatious

motions, pursuing charges that were defective, and receiving information from case agents were

acts taken as part of their "prosecutorial role of presenting the Government's case against Mr.

Gedeon." *Id.* at *4. Finally, the Court determined that the relief sought by Mr. Gedeon against

them was not relief that could be granted in a civil action.

      Mr. Gedeon raises nearly identical arguments in his two Motions seeking relief in the

nature of reconsideration.[2] He asserts that the Court erred in dismissing the claims based on the

---

[1] Claims against United States Attorney, Jacqueline C. Romero, were dismissed because Mr. Gedeon alleged no facts about her personal involvement in the incidents he described. *Screening Memorandum*, 2023 WL 3570942, at 3. He makes no arguments in his Motions about that determination.

[2] While Mr. Gedeon references Federal Rule of Civil Procedure 60 in his Motions (*see* ECF No. 8 at 1; ECF No. 12 at 1), the Motions are properly determined pursuant to Rule 59(e). A motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e) to alter or amend a judgment, which must be filed no later than 28 days after the entry of judgment, should be granted only where the moving party shows that at least one of the following grounds is present: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its initial decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *United States ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 848–89 (3d Cir. 2014) (quoting *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) ).

prosecutors receiving information from the case agents because the prosecutors' act in receiving the information was not a "judicial" [sic] function. (ECF No. 8 at 2; ECF No. 12 at 1.) Notably, he adds an allegation in the second Motion that was not alleged in the Complaint, namely that the prosecutors received the disclosure before Mr. Gedeon was indicted. *Compare* ECF No. 12 at 2 (stating the disclosure "occurred before the indictment") *with* Compl. (ECF No. 2) at 9 (providing no time frame concerning when "[t]he contents of the Tumblr account [] was improperly disclosed to [Ms. Harrell and Ms. Geiger] in violation [of] 18 U.S.C. § 2707(g) by the Federal officers."). Even if Mr. Gedeon has included this allegation in the Complaint, there is no cause to reconsider dismissing the claims against Ms. Harrell and Ms. Geiger.

Because the Court dismissed the claims against Ms. Harrell and Ms. Geiger on immunity grounds, the Court did not reach the question of whether the claims themselves were otherwise plausible. Since the claims are additionally subject to dismissal because they are not viable *Bivens* claims, the Motions seeking reconsideration of the claims involving the case agents will be denied.

The basis for asserting a constitutional claim against a federal official is *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 392 (1971) (holding that a remedy is available for a federal agent's violation of a citizen's Fourth Amendment right to be free from warrantless searches and seizures); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001) (stating that the "purpose of *Bivens* is to deter individual federal officers from committing constitutional violations" by subjecting them to personal liability). However, the availability of *Bivens* as a cause of action is limited, and "the Supreme Court has plainly counseled against creating new *Bivens* causes of action." *Vanderklok v. United States*, 868 F.3d 189, 199 n.8 (3d Cir. 2017); *see also Hernandez v. Mesa*, 140 S. Ct. 735, 742-43 (2020) (stating that the "expansion of *Bivens* is a disfavored judicial activity," that "it is doubtful" that the outcome of *Bivens* would be the same if it were decided today, and that "for almost 40 years, [the Supreme Court] ha[s]

3

consistently rebuffed requests to add to the claims allowed under *Bivens*." (internal quotations marks and citations omitted)).

Since *Bivens* was decided in 1971, the Supreme Court "has repeatedly refused to extend *Bivens* actions beyond the specific clauses of the specific amendments [of the Constitution] for which a cause of action has already been implied, or even to other classes of defendants facing liability under those same clauses." *Vanderklok*, 868 F.3d at 200. The Supreme Court has recognized an implied private action against federal officials in only three cases: (1) *Bivens* itself — "a claim against FBI agents for handcuffing a man in his own home without a warrant" under the Fourth Amendment; (2) "a claim against a Congressman for firing his female secretary" under the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228 (1979); and, (3) "a claim against prison officials for failure to treat an inmate's asthma" under the Eighth Amendment, *Carlson*, 446 U.S. 14. *But see also Shorter v. United States*, 12 F.4th 366, 372 n.4 (3d Cir. 2021) (noting that the Supreme Court decision in *Farmer v. Brennan*, 511 U.S. 825, 830 (1994), involving a claim against federal prison officials who failed to keep a transgender prisoner safe from sexual assault, had also "recognized" a *Bivens* remedy; thus similar claim was not a new *Bivens* context); *id.*, n.5 ("*Abbasi* neglected to name *Farmer* because it saw that case as falling under the umbrella of *Carlson*").

Because expanding *Bivens* is "a 'disfavored' judicial activity," *see Ziglar v. Abbasi*, 137 S.Ct. 1843, 1857 (2017), a "rigorous inquiry . . . must be undertaken before implying a *Bivens* cause of action in a new context or against a new category of defendants." *Vanderklok*, 868 F.3d at 200; *see also Mammana v. Barben*, No. 20-2364, 856 F. App'x 411, 413 (3d Cir. 2021) (stating that "while *Bivens* claims are disfavored, they do not automatically fail") *Hernandez v. Mesa*, 140 S. Ct. 735, 742-43 (2020) (stating that the "expansion of *Bivens* is a disfavored judicial activity," that "it is doubtful" that the outcome of *Bivens* would be the same if it were decided today, and that "for almost 40 years, [the Supreme Court] ha[s] consistently rebuffed requests to add to the

claims allowed under *Bivens*." *Id.* at 472–73 (internal quotations marks and citations omitted)). "Whether a *Bivens* claim exists in a particular context is 'antecedent to the other questions presented,'" and is "'a threshold question of law.'" *Bistrian v. Levi*, 912 F.3d 79, 88 (3d Cir. 2018) (quoting *Hernandez v. Mesa*, 137 S.Ct. 2003, 2006 (2017), and *Vanderklok*, 868 F.3d at 197).

The "rigorous inquiry that must be undertaken before implying a *Bivens* cause of action in a new context or against a new category of defendants" as described in *Vanderklok*, 868 F.3d at 200, is a two-step inquiry. A court must first determine whether the case presents a "new *Bivens* context." *Abbasi*, 137 S.Ct. at 1859. "If the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court, then the context is new." *Id.* "Differing in a 'meaningful way,' in the very least, means 'an extension' of the *Bivens* remedy, even if just a 'modest extension.'" *Jacobs v. Alam*, 915 F.3d 1028, 1037 (6th Cir. 2019) (quoting *Abbasi*, 137 S. Ct. at 1864 ("[E]ven a modest extension is still an extension.")); *see also Hernandez*, 140 S. Ct. at 743 ("[O]ur understanding of a 'new context' is broad.")). The United States Supreme Court noted that meaningful differences may include:

> [T]he rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 137 S. Ct. at 1860.

Mr. Gedeon seeks to assert a constitutional claim sounding in prosecutorial misconduct against Ms. Harrell and Ms. Geiger based on their alleged receipt of information from the case agents. In the wake of *Abassi*, the vast majority of courts—including the United States Court of Appeals for the Third Circuit—have declined to extend a *Bivens* remedy to prosecutorial misconduct and malicious prosecution cases, finding that these cases present new *Bivens* contexts.

*See, e.g., Karkalas v. Marks*, No. 19-948, 2019 WL 3492232, at \*9–13 (E.D. Pa. July 31, 2019) (claim of "unlawful prosecution and pretrial detention following allegedly false and misleading statements to a grand jury" against prosecutor and Drug Enforcement Agency officer); *Pellegrino v. U.S. Transp. Sec. Admin.*, 896 F.3d 207, 231 (3d Cir. 2018), *modified on other grounds* 937 F.3d 164 (3d Cir. 2019) (*en banc*) (malicious prosecution claim against TSA officers); *Lane v. Schade*, No. 15-1568, 2018 WL 4571672, at \*7 (D.N.J. Sept. 24, 2018) (malicious prosecution claim against U.S. Park Service Rangers); *Cantú v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019) (malicious prosecution claim against FBI officers based on allegations of falsified affidavits); *Farah v. Weyker*, 926 F.3d 492, 496–99 (8th Cir. 2019) (claim of "exaggerating and inventing facts in report, hiding evidence that would have exonerated [plaintiffs], . . . pressuring and manipulating the alleged victims into lying[, and] deceiv[ing] prosecutors, the grand jury, and other investigators").

Because this case presents a new *Bivens* context, the Court must "turn to the second step of *Abbasi* and ask whether any 'special factors counsel[ ] hesitation' in permitting the extension." *Bistrian*, 912 F.3d at 90 (quoting *Abbasi*, 137 S. Ct. at 1859) (alteration in original). Central to the special factors analysis are "separation-of-powers principles" under which the provision of a new damages remedy should often be committed to Congress. *Abbasi*, 137 S. Ct. at 1857–58; *Hernandez*, 140 S. Ct. at 743. Among the special factors courts have relied upon are (1) "the existence of an alternative remedial structure," which "may by itself 'limit the power of the Judiciary to infer a new *Bivens* cause of action,'" *Bistrian*, 912 F.3d at 90 (quoting *Abbasi*, 137 S. Ct. at 1857–58), and (2) whether implying a *Bivens* remedy would intrude on "national security decisions, insofar as they relate to foreign relations and the military." *Vanderklok*, 868 F.3d at 206–07. Other special factors may include "the potential cost to the government of recognizing a private cause of action, both financially and administratively; whether the judiciary is well suited

to weigh those costs; the necessity to deter future violations; . . . whether a claim addresses individual conduct or a broader policy question; [and] whether litigation would intrude on the function of other branches of government. . . ." *Bistrian*, 912 F.3d at 90 (citing *Abbasi*, 137 S. Ct. at 1856–63). If there are special factors counseling hesitation, "a *Bivens* remedy will not be available." *Abbasi*, 137 S. Ct. at 1857. The Supreme Court's decisions in *Abbasi, Hernandez,* and the cases preceding them make clear that lower courts must exercise caution and restraint before permitting claims that present even a modest extension of *Bivens*.

Special factors counseling hesitation in extending a *Bivens* remedy to Mr. Gedeon's claims against Ms. Harrell and Ms. Geiger for prosecutorial misconduct exist and clearly counsel against the extension. Alternative remedial structures exist for wrongfully prosecuted individuals. 18 U.S.C. § 3006A provides a prevailing defendant in a federal criminal prosecution a remedy for having his attorney's fees and costs covered by the government if he can show "'the position of the United States' in the prosecution 'was vexatious, frivolous, or in bad faith.'" *United States v. Reyes-Romero*, 959 F.3d 80, 84 (3d Cir. 2020) (citing § 3006A). Also, the alleged improper actions of Ms. Harrell and Ms. Geiger in receiving information from the case agents may be raised in pretrial proceedings and impact Mr. Gedeon's criminal case. There are separation of powers concerns raised in asking the Court to preemptively examine the actions of executive branch prosecutors in the context of a civil case, as well as concerns related to the efficient administration of justice, and concerns about intruding on the function of another branch of government. It also remains that the relief Mr. Gedeon seeks on his claims—that Ms. Harrell and Ms. Geiger be criminal charged for their conduct—is relief the Court cannot grant in any event. Accordingly, the Court declines to permit an extension of *Bivens* in this context. Consequently, Mr. Gedeon's Motions seeking reconsideration of the dismissal of all claims against Ms. Harrell and Ms. Geiger is denied.

## II.     MOTION FOR CLARIFICATION

In his Motion for Clarification (ECF No. 9), Mr. Gedeon seeks to clarify that he intended to assert claims under various statutes he cited in his Complaint. (*Id* at 1-2.) There is no need for clarification. The Court recognized that "Mr. Gedeon appears to assert civil rights claims against federal officials and assert statutory claims against private entities and the United States." *Screening Memorandum*, 2023 WL 3570942, at *3. The Court did not need to discuss his statutory claims in the Screening Memorandum because of the clear need to stay the claims while his criminal proceedings involving his own statutory criminal violations remains pending. *Id*. at *4. Accordingly, the Motion is denied.

## III.     MOTION FOR CREATION OF REMEDY

Mr. Gedeon seeks in this one-page Motion an order creating a "remedy for the defect of 18 U.S.C. § 2252." (ECF No. 10 at 1.) Section 2252, one of the criminal statutes Mr. Gedeon is under indictment for violating, makes it illegal to distribute in interstate or foreign commerce "any visual depiction . . . if (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct . . . ." Mr. Gedeon asserts that the statute "makes the failure to comply with the requirement to be punished for distribution of child pornography a crime, instead of distribution itself, among other constitutional issues mention [sic] in the supplemental pleading." (*Id*.) He asks the Court to "create a remedy upon the filing of the appropriate pleading" and seeks a hearing. (*Id*.)

Mr. Gedeon's request for the Court to provide an interpretation of the criminal statute for which he has been indicted is a question of law relevant to his criminal proceeding, not his civil action against telecommunications companies and government officials for constitutional violations and violations of different statutes. Accordingly, the Motion is denied without prejudice to Mr. Gedeon reasserting his argument in his criminal proceeding.

## IV.    MOTION FOR LEAVE TO AMEND

Mr. Gedeon seeks leave to amend his Complaint. (ECF No. 11.) He states he wants to amend because he has been detained since May 2021 and has a pending motion in his criminal case for pretrial release. He asserts his detention "is punitive, which is a due process violation." (*Id.* at 1.) However, Mr. Gedeon has failed to attach his proposed amended complaint to the Motion.

Under Rule 15(a), if a plaintiff requests leave to amend a complaint vulnerable to dismissal before a responsive pleading is filed, such leave should be granted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). "However, that allowance is not absolute. . . . A plaintiff's 'failure to provide a draft amended complaint' is 'an adequate basis on which the court could deny [a] plaintiff's request' to amend [because] [w]ithout a proposed amended complaint, a court 'cannot evaluate the merits of a plaintiff's request' and has 'nothing upon which to exercise its discretion.'" *Id. See also Aileron Solutions v. Health Mkt. Sci., Inc.*, Civ. No. 11–4244, 2013 WL 5377286 (E.D. Pa. Sept. 25, 2013) (recognizing that a plaintiff's failure to attach a proposed amended complaint is fatal to a request for leave to amend) citing *Fletcher-Harlee Corp. v. Pote Concrete Contrs.*, Inc., 482 F.3d 247. 252 (3d Cir. 2007) (noting that "to request leave to amend a complaint, the plaintiff must submit a draft amended complaint to the court so that it can determine whether amendment would be futile" and finding failure to do so "fatal to a request for leave to amend.") and *Lake v. Arnold*, 232 F.3d 360, 374 (3d Cir. 2000) (concluding that a plaintiff's "failure to provide a draft amended complaint would be an adequate basis on which the court could deny the plaintiff's request [for leave to amend].")).

The motion for leave to amend must be denied without prejudice on this basis. Mr. Gedeon has failed to provide a draft amended complaint with his motion meaning the Court has no basis upon which to exercise its discretion to allow the amendment. Moreover, the Federal Rules of Civil Procedure do not contemplate piecemeal pleadings or the amalgamation of pleadings, even in the context of a *pro se* litigant. *See Bryant v. Raddad*, No. 21-1116, 2021 WL 2577061, at *2 (E.D. Pa. June 22, 2021) ("Allowing a plaintiff to file partial amendments or fragmented supplements to the operative pleading, 'presents an undue risk of piecemeal litigation that precludes orderly resolution of cognizable claims.'" (quoting *Uribe v. Taylor*, No. 10-2615, 2011 WL 1670233, at *1 (E.D. Cal. May 2, 2011)); *Brooks-Ngwenya v. Bart Peterson's the Mind Tr.*, No. 16-193, 2017 WL 65310, at *1 (N.D. Ind. Jan. 6, 2017) ("Piecemeal pleadings cause confusion and unnecessarily complicate interpretation of a movant's allegations and intent[] . . . ."). Mr. Gedeon's Motion merely seeks to add an additional claim to those contained in the original Complaint. This piecemeal process is not the proper means to accomplish his request. Accordingly, the Court will deny the Motion to amend with leave to reassert by filing a new Motion appending a proposed amended complaint containing all claims Mr. Gedeon seeks to pursue in his civil case when the stay of this case is lifted following the final outcome of Mr. Gedeon's criminal charges in *United States v. Gedeon*, No. 21-CR-210 (E.D. Pa.).

*   *   *

## V.     CONCLUSION

For the reasons stated, Mr. Gedeon's two Motions seeking relief in the nature of reconsideration and his Motion for Clarification will be denied.  The Motion for Creation of Remedy will be denied without prejudice to his reasserting his arguments in his criminal case, and the Motion to Amend will be denied without prejudice.  Mr. Gedeon's claims will remain stayed pending the final outcome of his criminal charges in *United States v. Gedeon*, No. 21-CR-210 (E.D. Pa.).  An appropriate Order follows.

BY THE COURT:

_____

GENE E.K. PRATTER, J.